**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WINSTON PEETE, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BIOLINERX LTD. and PHILIP A. SERLIN,<br><br>        Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Winston Peete ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press

releases published by and regarding BioLineRx Ltd. ("BioLine" or the "Company")

Ltd, and information readily obtainable on the Internet. Plaintiff believes that

substantial evidentiary support will exist for the allegations set forth herein after a

reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or

otherwise acquired publicly traded BioLine Rx Ltd. American Depositary Shares

("ADSs") between February 23, 2021 and September 19, 2022, inclusive (the

"Class Period"). Plaintiff seeks to recover compensable damages caused by

Defendants' violations of the federal securities laws under the Securities Exchange

Act of 1934 (the "Exchange Act".)

## JURISDISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b)

and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5

promulgated thereunder (17 C.F.R.  §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged

misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased BioLine securities during the Class Period and was economically damaged thereby.

7.      Defendant BioLine is a pre-commercial stage biopharmaceutical company focused on oncology, headquartered at 2 Hama'ayan St, Modi'in, Central District, 7177871, Israel. Bioline ADSs are listed on NASDAQ under ticker symbol BLRX.

8.      Defendant Philip A. Serlin ("Serlin") is and was at all pertinent times the Company's Chief Executive Officer.

9.      Defendant Serlin:

(a)     directly participated in the management of the Company;

(b)   was directly involved in the day-to-day operations of the Company at the highest levels;

(c)   was privy to confidential proprietary information concerning the Company and its business and operations;

(d)   was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)   was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)   was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)   approved or ratified these statements in violation of the federal securities laws.

10.   The Company is liable for the acts of defendant Serlin and his employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

11.   The scienter of Serlin and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

12.     The Company and Serlin are referred to herein, collectively, as the "Defendants".

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading
### Statements Issued During the Class Period

13.     On February 23, 2021, BioLine filed its 6-K announcing its financial results for the year ended December 31, 2020 signed by Serlin, attaching its Press Release which stated, in pertinent part:

> "…[S]ubsequent to the end of the year, we strengthened our balance sheet through a financing that resulted in gross proceeds of $34.5 million. These funds will allow us to continue to execute on our strategy for motixafortide in both SCM and PDAC, while in parallel advancing our second clinical candidate, the anti-cancer immunotherapy AGI-134, through clinical development. In summary, we exited 2020 on a very positive note, with two data sets that demonstrate both the effectiveness and versatility of motixafortide across multiple indications, and we plan to build upon these successes this year," concluded Mr. Serlin.

14.     On May 26, 2021, BioLine filed it 6-K announcing its financial results for the quarter ended March 31, 2021 signed by Serlin, attaching its Press Release which stated, in pertinent part, as follows:

> "Subsequent to the end of the first quarter, we were extremely excited to announce positive topline results from our GENESIS Phase 3 trial of Motixafortide in stem-cell mobilization for autologous bone marrow transplantation in multiple myeloma patients," stated Philip Serlin, Chief Executive Officer of BioLineRx. "The results demonstrated, with a high degree of statistical significance, a meaningful clinical benefit from adding Motixafortide to the current standard of care, G-CSF, for the mobilization of the targeted number of stem cells required for transplantation…

"We are working diligently to submit a New Drug Application to the FDA in the first half of next year. If approved, this would be transformative for BioLineRx, and a huge milestone in the Company's history…

"To support these and other initiatives, including continued advancement of our second clinical candidate, the anti-cancer vaccine AGI-134, we raised $34.5 million in January that we believe will finance the Company through multiple potentially value-creating milestones," concluded Mr. Serlin.

15.     On August 18, 2021, BioLine filed its 6-K announcing its financial results for the quarter ended June 30, 2021 signed by Serlin, attaching its Press Release which stated, in pertinent part, as follows:

"Following the overwhelmingly positive results from our Phase 3 GENESIS trial of Motixafortide in stem-cell mobilization that we announced in May, we are working vigorously to submit an NDA in the first half of next year," stated Philip Serlin, Chief Executive Officer of BioLineRx. "If approved, this would be transformative for BioLineRx as we would have a commercial-stage molecule in multiple myeloma and significant potential clinical utility in other cancer indications as well, most notably pancreatic cancer….

"We are very well financed with $66 million of cash, sufficient to bring Motixafortide through potential FDA approval in SCM while continuing to advance our other clinical programs," concluded Mr. Serlin.

16.     On November 18, 2021, BioLine filed its 6-K announcing its financial results for the quarter ended September 30, 2021 signed by Serlin, attaching its Press Release which stated, in pertinent part, as follows:

"The key highlight since our last quarterly update was the statistically significant positive results from a pharmacoeconomic study of

Motixafortide in stem cell mobilization for multiple myeloma patients," stated Philip Serlin, Chief Executive Officer of BioLineRx.

"These results…strongly support our view that Motixafortide, in combination with G-CSF, can become the new standard of care in SCM as an upfront, or primary, therapy for all multiple myeloma patients." "If approved, this represents a significant advancement in SCM to the benefit of patients and payers alike and, to that end, we plan to submit an NDA to the FDA in the first half of next year…

"With over $62 million in cash, we believe we are well financed to achieve our upcoming important and potentially value creating milestones,"

17.     On March 16, 2022, BioLine filed its 6-K announcing its financial results for the quarter ended December 31, 2021 signed by Serlin, attaching its Press Release which stated, in pertinent part, as follows:

"The opportunity for Motixafortide in stem-cell mobilization is significant," stated Philip Serlin, Chief Executive Officer of BioLineRx. "We recently commissioned a comprehensive third-party market assessment which identified a $360 million addressable annual opportunity in the US. We continue to maintain optionality among a number of commercialization alternatives, as we believe the very concentrated end market, where approximately 80 transplant centers in the US conduct the vast majority of stem cell transplant procedures, would require a limited commercialization footprint. In the meantime, in order to ensure that Motixafortide is well positioned for a timely and robust US launch that will maximize the value of the asset, we have initiated a number of pre-commercialization launch activities…

"Following our very productive pre-NDA meeting with FDA that we completed in December, we are diligently working to submit the NDA and position the product for commercialization. We anticipate the NDA submission will occur in mid-2022.

> "With over $57 million in cash, we believe we are well financed to extract maximum value from Motixafortide in SCM while at the same time advancing our other pipeline programs."

18.    On May 11, 2022, BioLine filed its 6-K announcing its financial results for the first quarter ended March 31, 2022 signed by Serlin, attaching its Press Release which stated, in pertinent part, as follows:

> "During the first quarter and subsequent period, we continued to prepare our New Drug Application for Motixafortide in stem cell mobilization, and we remain on track for submission to the FDA mid-year, consistent with our prior guidance," stated Philip Serlin, Chief Executive Officer of BioLineRx. …

> "With over $50 million in cash, we believe we are well financed to extract maximum value from Motixafortide in stem cell mobilization while at the same time advancing our other pipeline programs, allowing us to achieve notable corporate and clinical milestones into the first half of 2024," concluded Mr. Serlin.

19.    On August 16, 2022, BioLine filed its 6-K announcing its financial results for the second quarter ended 2022 signed by Serlin, attaching its Press Release which stated, in pertinent part, as follows:

> -- BioLineRx Ltd. (NASDAQ: BLRX) (TASE: BLRX), a pre-commercial-stage biopharmaceutical company focused on oncology, today reports its financial results for the second quarter ended June 30, 2022 and provides a corporate update.

> Significant events and achievements during the second quarter 2022 and subsequent period:

> Progressed the New Drug Application (NDA) for Motixafortide in stem cell mobilization (SCM), with submission to the FDA expected within the next 4-6 weeks;…

Continued to advance critical pre-launch activities with respect to Motixafortide commercialization in the U.S., if approved; …

Ended the second quarter on solid financial footing, with cash and cash equivalents of $43.2 million, sufficient to fund operations, as currently planned, into the first half of 2024.

"Since our last quarterly update, we achieved significant progress across both our Motixafortide stem cell mobilization and pancreatic cancer (PDAC) programs," stated Philip Serlin, Chief Executive Officer of BioLineRx. …"

"In summary, we believe we are well-positioned to deliver several meaningful potential regulatory, commercial and clinical catalysts over the next 12-18 months," concluded Mr. Serlin…

20.    The statements contained in ¶¶ 13-19 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose, among other things, that: (1) the Company was not well financed to develop Motixafortide while at the same time advancing other pipeline programs; and (2) BioLine would require a loan from Kreos Capital VII Aggregator SCSP in an aggregate principal amount of up to $40 million and then also would require a $15M securities offering to facilitate the commercial launch of Motixafortide.

21.    On September 15, 2022, the Company filed its 6-K signed by Serlin

which stated, in pertinent part, as follows:

> On September 14, 2022, BioLineRx Ltd. (the "Company") entered into
> an Agreement for the Provision of a Loan Facility (the "Loan
> Agreement") with Kreos Capital VII Aggregator SCSP (the "Lender").
> Under the Loan Agreement, the Lender will provide the Company with
> access to term loans in an aggregate principal amount of up to $40
> million…
>
> The Company intends to use the proceeds of the Loans, together with
> cash on-hand, to facilitate the commercial launch of Motixafortide in
> autologous stem cell mobilization for multiple myeloma patients, as
> well as for general corporate purposes.

22.    On September 19, 2022, BioLine filed its 6-K signed by Serlin,

attaching its Press Release, which stated, in pertinent part, as follows:

> BioLineRx Ltd. (NASDAQ/TASE: BLRX), a pre-commercial-stage
> biopharmaceutical company focused on oncology, today announced
> that it has entered into definitive agreements with several institutional
> investors for the issuance and sale in a registered direct offering of
> 13,636,365 of the Company's American Depositary Shares (ADSs) and
> warrants to purchase up to an aggregate of 13,636,365 ADSs, at a
> combined purchase price of $1.10 per ADS and associated warrant.
> Each ADS represents fifteen (15) ordinary shares, par value NIS 0.10
> per share, of BioLineRx. The offering is expected to close on or about
> September 21, 2022, subject to satisfaction of customary closing
> conditions…
>
> The gross proceeds from the offering (without taking into account any
> proceeds from any future exercises of warrants issued in the private
> placement), before deducting the placement agent's fees and other
> offering expenses payable by the Company, are expected to be $15
> million.

> BioLineRx intends to use the net proceeds to facilitate the commercial launch of Motixafortide in autologous stem cell mobilization for multiple myeloma patients and general corporate purposes, which may include working capital and funding clinical trials…

23.    On this news, the price of BioLine's stock fell 33% to close at $1.02 per share on September 19, 2022, damaging investors.

24.    On September 19, 2022, Seeking Alpha reported, in pertinent part, as follows:

> BioLineRx…shares dropped 30% pre-market on Monday after the biopharmaceutical company announced a $15M securities offering.
>
> The firm entered into definitive agreements with several institutional investors for the issuance and sale of 13,636,365 of its American Depositary Shares and warrants to purchase up to 13,636,365 ADSs at a combined purchase price of $1.10 per ADS and associated warrant…
>
> Gross proceeds from the offering are expected to be $15M. Net proceeds will be used to facilitate the commercial launch of Motixafortide in autologous stem cell mobilization for multiple myeloma patients and general corporate purposes, which may include working capital and funding clinical trials.
>
> Comments to the Seeking Alpha Report included, in pertinent part, the following:
>
> …How is this guy still CEO? Look at the stock price during his tenure, despite positive data. One year from the analysis of data for phase 3 he submits the NDA. Totally incompetent. And offering with both for 30% less than the stock price.
>
>  …this appears to be a move out of fear. That concerns me. He has cash and a line of credit. Why the need for $15m?

25.     As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons other than Defendants who acquired BioLine securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of BioLine, members of Serlin's immediate family and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, BioLine securities were actively traded on NASDAQ While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

28.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

30.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of BioLine;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused BioLine to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of BioLine securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

32.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- BioLine securities met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;

- As a public issuer, BioLine filed periodic public reports;

- BioLine regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and

14

through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- BioLine securities were liquid and traded with moderate to heavy volume during the Class Period; and

- BioLine was followed by securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

33.    Based on the foregoing, the market for BioLine securities promptly digested current information regarding BioLine from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

34.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

<u>**COUNT I**</u>
**For Violations of Section 10(b) And Rule 10b-5 Promulgated
Thereunder**
<u>**Against All Defendants**</u>

35.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36.     This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

37.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

•     employed devices, schemes and artifices to defraud;

•     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

16

- engaged in acts, practices and a course of business that operated as a

fraud or deceit upon plaintiff and others similarly situated in connection with their

purchases of Gaotu securities during the Class Period.

39.     Defendants acted with scienter in that they knew that the public

documents and statements issued or disseminated in the name of BioLine were

materially false and misleading; knew that such statements or documents would be

issued or disseminated to the investing public; and knowingly and substantially

participated, or acquiesced in the issuance or dissemination of such statements or

documents as primary violations of the securities laws. These Defendants by virtue

of their receipt of information reflecting the true facts of BioLine, their control

over, and/or receipt and/or modification of BioLine's allegedly materially

misleading statements, and/or their associations with the Company which made

them privy to confidential proprietary information concerning BioLine,

participated in the fraudulent scheme alleged herein.

40.     Serlin, who is a senior officer and/or director of the Company, had

actual knowledge of the material omissions and/or the falsity of the material

statements set forth above, and intended to deceive Plaintiff and the other members

of the Class, or, in the alternative, acted with reckless disregard for the truth when

he failed to ascertain and disclose the true facts in the statements made by them or

17

other BioLine personnel to members of the investing public, including Plaintiff and the Class.

41.     As a result of the foregoing, the market price of BioLine securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of BioLine securities during the Class Period in purchasing BioLine securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

42.     Had Plaintiff and the other members of the Class been aware that the market price of BioLine securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased BioLine securities at the artificially inflated prices that they did, or at all.

43.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

44.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of BioLine securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Defendant Serlin

45.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46.     During the Class Period, Serlin participated in the operation and management of BioLine, and conducted and participated, directly and indirectly, in the conduct of BioLine's business affairs. Because of his senior position, he knew the adverse non-public information about BioLine's false financial statements.

47.     As an officer and/or director of a publicly owned company, Serlin had a duty to disseminate accurate and truthful information with respect to BioLine's financial condition and results of operations, and to correct promptly any public statements issued by BioLine which had become materially false or misleading.

48.     Because of his position of control and authority as senior officer or director, Serlin was able to, and did, control the contents of the various reports, press releases and public filings which BioLine disseminated in the marketplace during the Class Period concerning BioLine's results of operations. Throughout the Class Period, Serlin exercised his power and authority to cause BioLine to engage in the wrongful acts complained of herein. Serlin, therefore, was a "controlling person" of BioLine within the meaning of Section 20(a) of the Exchange Act. In

this capacity, he participated in the unlawful conduct alleged which artificially inflated the market price of BioLine securities.

49.     By reason of the above conduct, Serlin is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by BioLine.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: January 5, 2023            **THE ROSEN LAW FIRM, P.A.**

                                          /s/*Laurence M. Rosen*

                                          Laurence M. Rosen, Esq.

                                          One Gateway Center, Suite 2600

                                          Newark, NJ 07102

                                          Telephone: (973) 313-1887

                                          Fax: (973) 833-0399

                                          lrosen@rosenlegal.com

                                          *Counsel for Plaintiff*