**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE BIOLINERX LTD. SECURITIES LITIGATION <br><br> ──────── <br><br> THIS DOCUMENT RELATES TO ALL ACTIONS | Civil Action No. 2:23-cv-00041 BRM-JBC <br><br> Document Filed Electronically |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED
COMPLAINT**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT

    I.     The Amended Complaint Does Not Adequately Allege Any False or Misleading Statements .......................................................................2

    II.    Defendants' Statements Were Forward-Looking and Protected by the PSLRA Safe Harbor ...............................................4

          A.     Defendants' Statements Were Forward-Looking ......................5

          B.     Defendants' Forward-Looking Statements Were Accompanied by Meaningful Cautionary Statements................8

          C.     The Amended Complaint Does Not Allege Facts Creating a Strong Inference of Actual Knowledge of Falsity ...................10

    III.   The Amended Complaint Fails to Adequately Allege Scienter..........10

CONCLUSION .......................................................................................................13

i

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE**

*In re Amarin Corp. PLC*,
   Civil Action No. 13-cv-6663 (FLW)(TJB), 2015 U.S. Dist. LEXIS
   84080 (D.N.J. June 26, 2015)...............................................................................11

*Gissen v. Endres*,
   739 F. Supp. 2d 488 (S.D.N.Y. 2010) ......................................................6, 7, 8

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)...................................................................4, 7, 10

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007)..................................................................11

*In re Stone & Webster, Inc. Sec. Litig.*,
   414 F.3d 187 (1st Cir. 2005) ................................................................5, 6, 7

*In re Stone & Webster, Inc., Sec. Litig.*,
   No. 1:00-cv-10874, Dkt. No. 39.........................................................................5

**Statutes**

15 U.S.C. § 78u-5(c)..................................................................................................4

15 U.S.C. § 78u-5(c)(1) .............................................................................................4

PSLRA ..................................................................................... 1, 4, 10, 13

## PRELIMINARY STATEMENT

Plaintiffs' opposition does not overcome any of the three fatal deficiencies in the Amended Complaint ("AC"). First, the AC does not adequately allege any false or misleading statements. Plaintiffs claim that Defendants' prior statements concerning their belief that the Company had sufficient capital to meet its projected needs through the first half of 2024 were false and misleading based solely on the fact that the Company raised capital in September 2022. That argument relies on a faulty assumption that companies raise capital only when they have a current need, which is not the case, especially for development stage companies.

Second, even if Defendants' statements were false or misleading, which they were not, they would not be actionable because they were forward-looking and protected by the PSLRA safe harbor for forward-looking statements. The statements fit within the safe harbor for two independent reasons: (1) the statements were not only accompanied by appropriate cautionary risks but also by affirmative statements that, notwithstanding the sufficiency of the Company's current cash position, the Company *will be required to raise capital*; and (2) the AC does not allege facts demonstrating that Defendants had *actual knowledge* that their statements were false.

Finally, the AC fails to adequately plead scienter. The Individual Defendants' alleged motive to earn special bonuses tied to raising capital is insufficient to support

1

an inference of scienter as a matter of law. Moreover, Plaintiffs' argument is illogical and contradicts the premise of their case that the Company would have raised capital only if it had a current need for capital.

Each of the forgoing provides an independent basis for the Court to dismiss the Amended Complaint.

## ARGUMENT

### I. The Amended Complaint Does Not Adequately Allege Any False or Misleading Statements

The Company's capital raise in September 2022 was not an admission that the Company's cash position was insufficient to fund its operations through the first half of 2024, and Plaintiffs point to no other corrective disclosures or facts that would make the Company's statements regarding its current cash position false or misleading. Indeed, Plaintiffs do not, because they cannot, dispute that throughout the class period Defendants accurately disclosed the Company's current cash position and affirmatively stated that the Company would require additional capital in the future.  Instead, Plaintiffs argue that Defendants' statements that they believed the Company had sufficient cash to fund its business through the first half of 2024 were false and misleading simply because the Company raised capital in September 2022.

Plaintiffs' claim relies on a faulty assumption that companies raise capital only when they have a current need. Companies, especially development-stage

2

companies, generally do not wait to raise capital until there is an immediate need because, as the Company warned in its SEC filings, "it might not be able to raise capital when needed or on favorable terms." ECF No. 33-1 ("Moving Br."), at 21-22. For this reason, among others, companies will raise capital when an opportunity presents itself regardless of any current need.[1]  Thus, the Company's capital raise in September 2022 was not tantamount to an affirmative disclosure that the Company had a current need for additional financing to fund its operations through the first half of 2024.

Plaintiffs have no factual basis for their claim that Defendants should have disclosed that the Company "*did not have sufficient capital* until the first half of 2024 to achieve certain milestones, including the commercial launch of Motixafortide." Opp. at 18-19 (emphasis added). Plaintiffs presumably rely on their false assertion that when the Company announced its capital raise it "*disclosed that it required additional capital* to facilitate the commercial launch of Motixafortide." Opp. 1 (emphasis added). But the Company did not disclose that it *required* additional capital. It simply explained how it intended to use the capital it raised: "to use the net proceeds to facilitate the commercial launch of Motixafortide . . .  and for general

---

[1] In their attempt to plead scienter, Plaintiffs identify another, though theoretical, reason for raising capital independent of any current need: management's desire to earn bonuses based on a capital raise.

3

corporate purposes, which may include working capital and funding clinical trials." AC ¶ 82.

Simply stated, the AC does not allege any facts demonstrating that Defendants' statements concerning the sufficiency of the Company's cash position were false or misleading. For that reason alone, the AC should be dismissed.

## II.   Defendants' Statements Were Forward-Looking and Protected by the PSLRA Safe Harbor

The PSLRA provides a safe harbor for forward-looking statements, even if false, if the statement is accompanied by meaningful cautionary language *or* Plaintiffs have not alleged facts demonstrating that Defendants had actual knowledge that the statements were false.  15 U.S.C. § 78u-5(c)(1); *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 254 (3d Cir. 2009) ("The Safe Harbor provision, 15 U.S.C. § 78u-5(c), immunizes from liability *any* forward-looking statement, provided that: the statement is identified as such and accompanied by meaningful cautionary language; or is immaterial; *or* the plaintiff fails to show the statement was made with actual knowledge of its falsehood." (emphasis added)).

To survive a motion to dismiss, Plaintiffs must allege facts creating a strong inference that Defendants had *actual knowledge* that the forward-looking statements were false. "Whereas liability for [statements of current fact] requires a showing of either knowing falsity or recklessness, liability for [forward-looking statements] attaches only upon proof of knowing falsity." *Avaya*, 564 F.3d at 274.

4

### A.    Defendants' Statements Were Forward-Looking

It is undisputed that Defendants accurately reported the Company's current cash position. Thus, Defendants' statements of their belief that the cash was sufficient to meet the Company's needs through the first half of 2024 were clearly forward-looking because they could only be false with reference to the Company's projection of its future needs.

Plaintiffs claim Defendants' statements were not forward-looking because they misrepresented "that the Company *currently* had sufficient funds through the first half of 2024." Opp. 2 (emphasis in original). They rely heavily on the First Circuit decision, *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187 (1st Cir. 2005) (Opp. 13), which involved facts with virtually no resemblance to those here. According to the complaint in that case, "[o]n April 14, 2000, S&W's 10-K represented that the Company had net assets of $324.3 million. Within a few short weeks, S&W had filed for bankruptcy and had admitted that it had no net assets, let alone $324.3 million. Stunned investors wanted to know how $324.3 million in assets had so quickly disappeared. In fact, those assets had never existed in the first place." *In re Stone & Webster, Inc., Sec. Litig.*, No. 1:00-cv-10874, Dkt. No. 39, ¶ 36 (Jan. 4, 2001 D. Mass). The First Circuit ruled the portion of the statement alleged to be false was a statement of current fact: "[t]he alleged falsehood was in the fact that the statement claimed that the Company had access to ample cash *at a*

5

*time when the Company was suffering a dire cash shortage.*" *Id*. at 213 (emphasis added). In other words, the part of the statement alleged to be false was the present fact of the amount of cash on hand, not the forward-looking part of the statement.

Here, Plaintiffs are not challenging, because they cannot challenge, Defendants' statements of the Company's then-current cash position, which is the portion of the statements that speak of a present fact. Instead, the alleged falsehood relates to whether the Company's cash position would be sufficient to meet the Company's projections of its capital needs over the next 21 months. The statements are classic forward-looking statements, because Defendants' statements could only be false with reference to the Company's projection of its cash needs over the ensuing 21 months.

In *Gissen v. Endres*, 739 F. Supp. 2d 488 (S.D.N.Y. 2010), Judge Scheindlin considered statements (similar to those involved here) to the effect that the company had sufficient cash to meet its financial obligations for the year. *Id*. at 499. As an example, the court cited the Company's statement that: "[B]ased on our *current* expectation of cash flows from operations and the cash and cash equivalent short-term investments, and also our revolving credit facility, we feel we will be in a position to fund those capital investments for the year." *Id.* at 505. The plaintiffs argued that the statements misrepresented a current fact because the defendants assured investors of the company's future liquidity based on the company's "prior

6

and present" cash status. *Id.* Judge Scheindlin ruled that those statements were forward-looking because:

> [P]laintiffs do not actually contest the veracity of any present tense portion of defendants' statements[2]—to the extent that there are assertions of current fact in the statements proffered as fraudulent, they refer to the present only as a means for gauging future possibilities and, "when read in context, cannot meaningfully be distinguished from the future projection of which they are part." . . . [T]he actual statement "does not justify the financial projections in terms of any particular aspect of the company's current situation" but "says only that, whatever that situation is, it makes the future projection attainable." As such, it merely presents "an assertion that is necessarily implicit in every future projection."

*Id.* at 505-06 (citing *Avaya,* 564 F.3d at 255). In distinguishing *Stone & Webster*, Judge Scheindlin found the statements in *Gissen* to be "more closely aligned with the circumstances of *Avaya*, in which the Third Circuit determined that defendants' assertions that their company was 'on track' and 'positione[d]' to meet its goals [were forward-looking statements and] were not actionable, notwithstanding contentions that the Company failed to disclose internal problems which made its projections highly improbable." *Gissen*, 739 F. Supp. 2d at 508 n. 108 (citing *Avaya*, 564 F.3d at 256).

Here, like in *Gissen*, there is no allegation that Defendants misrepresented the Company's current cash position. Like the statements in *Gissen*, Defendants'

---

[2] Judge Scheindlin specifically noted that the plaintiffs there, like those here, "do not refute that the SEC filings, which defendants were referencing in their responses throughout the [investor] call, were in any way incorrect." *Id*. at 506.

statements of their belief that the Company's current cash position would be sufficient to meet the Company's obligations through the first half of 2024 "cannot meaningfully be distinguished from the future projection of which they are part." *Id*. at 505. Thus, Defendants' statements were forward-looking.

### B.      Defendants' Forward-Looking Statements Were Accompanied by Meaningful Cautionary Statements

Defendants' forward-looking statements were accompanied by meaningful cautionary statements, not just cautioning that the Company *might* need to raise capital but affirmatively stating that it *will* need to raise capital. And the affirmative statements that the Company will need to raise capital were not only referenced in SEC filings, but in most cases, accompanied the very statements Plaintiffs allege were false.

Plaintiffs argue that the cautionary statements that the Company would need to raise capital in the future were not meaningful because Defendants knew the Company had a current need to raise capital. Opp. at 15-16. That argument is based on Plaintiffs' wholly conclusory and flawed assumption that the Company had a current need to raise additional capital. As discussed above, there is no basis for Plaintiffs' assumption that the Company would not have raised capital unless it had a current need.

Plaintiffs also argue the cautionary language "was not meaningful because it was not tailored to the specific forward-looking statements" in that "[m]uch of the

8

cautionary language is applicable to any company in the pharmaceutical industry and does not warn investors of the specific risks that Defendants failed to disclose." Opp. 16. Plaintiffs do not identify the "specific risks" they claim Defendants failed to disclose. In light of the alleged corrective disclosure, the only such risk could be that the Company would raise capital.  But the Company disclosed that risk multiple times in multiple places throughout the alleged class period and Defendants' statements were almost always accompanied by an affirmative statement that the Company will require additional capital in the future.  *See e.g.*, Moving Br. at 7-13.[3]

---

[3] For example, throughout the class period and as late as August 16, 2022, Defendants stated:

> **Management believes** that the Company's current cash and other resources will be sufficient to fund its projected cash requirements into the first half of 2024. **However, in the event that the Company does not begin to generate sustainable cash flows from its operating activities in the future, the Company will need to carry out significant cost reductions or raise additional funding.**
> …
> Developing drugs, conducting clinical trials and commercializing products is expensive and **we will need to raise substantial additional funds to achieve our strategic objectives. Although we believe** our existing cash and other resources will be sufficient to fund our current projected cash requirements into the first half of 2024, **we will require additional financing in the future to fund our operations.**

Moving Br. at 12.

**C.      The Amended Complaint Does Not Allege Facts Creating a Strong Inference of Actual Knowledge of Falsity**

Even if the cautionary statements were not sufficiently tailored to Defendants' forward-looking statements—they were—and the statements were false—they were not—Defendants' statements would be protected by the safe harbor because the allegations in the AC are insufficient to create a strong inference that Defendants had *actual knowledge* that the statements were false. *See Avaya*, 564 F.3d at 274 ("In the case of forward-looking statements, however, an inference of recklessness does not avail plaintiffs—that is, it must be placed on the nonculpable-explanation side of the balance when we weigh competing inferences."). As discussed below, the allegations in the AC do not support a strong inference of recklessness, much less a strong inference of actual knowledge. Thus, Defendants' statements fall squarely within the PSLRA safe harbor and are not actionable.

**III.    The Amended Complaint Fails to Adequately Allege Scienter**

Plaintiffs attempt to create an inference of scienter by pointing to the Individual Defendants' receipt of special bonuses tied to the capital raise. The supposed motive, however, is insufficient as a matter of law to create an inference of scienter and is illogical.  Moreover, the argument contradicts Plaintiffs' primary

10

argument that the Company's capital raise necessarily rendered Defendants' statements false or misleading.[4]

With no factual basis, Plaintiffs allege that in 2021 "the Company admittedly needed substantial additional funds to commercialize Motixafortide," (it admitted no such thing) but because the Individual Defendants already earned their maximum special bonuses for 2021, they misled the market to believe the Company had sufficient capital through the first half of 2024. Opp. at 22. Then, Plaintiffs argue, the Individual Defendants pumped up the stock price in 2022 by again misrepresenting that the Company had sufficient capital through the first half of 2024, so they could raise capital in 2022 and thereby earn their special bonuses tied to raising capital. *Id.* at 22-23.

The receipt of special bonuses tied to raising capital does not by itself establish the motive necessary to establish scienter. *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 158-59 (D. Conn. 2007) (finding that because "[i]n today's corporate environment, . . . nearly all executives are compensated with stock options and

---

[4] On the one hand, Plaintiffs allege that the Company's capital raise was an admission that Defendants' prior statements concerning the sufficiency of its cash position were false because otherwise the Company would not have raised additional capital. Yet, on the other hand, Plaintiffs argue that the Individual Defendants were motivated to raise capital, not because the Company needed it, but instead to earn special bonuses tied to the capital raise. Thus, Plaintiffs' scienter argument undermines the fundamental premise of their case that the capital raise was a corrective disclosure that reflected the Company's current need for additional capital.

incentive bonuses," the "receipt of incentive compensation, including performance-based bonuses, does not, by itself, establish [the] motive" necessary to establish scienter), *aff'd*, 312 F. App'x 400 (2d Cir. 2009); *see also In re Amarin Corp. PLC*, Civil Action No. 13-cv-6663 (FLW)(TJB), 2015 U.S. Dist. LEXIS 84080, at *57-58 (D.N.J. June 26, 2015) (rejecting allegation that pecuniary motivations are sufficient to demonstrate scienter).

Moreover, Plaintiffs' proposed inference of scienter is illogical. Their argument requires the Court to infer that Defendants (a) lied that the Company had no current need to raise capital in 2022 (b) to artificially inflate the Company's stock price (c) so the Company could raise capital in 2022. It strains credulity to believe that Defendants would lie about not needing additional capital so the Company could raise additional capital. These allegations of motive do not and cannot support a strong and cogent inference of scienter.

Plaintiffs' additional arguments in support of scienter fare no better. That Mr. Serlin allegedly had a strong motive to earn a special bonus because shareholders had failed to approve a July 2022 proposal regarding his cash compensation (Opp. 25-26) is simply a further extension of their motive argument that, as discussed above, collapses under its own weight. Plaintiffs' argument that the Company allegedly knew in the summer of 2022 that it would likely self-commercialize Motixafortide (Opp. 26-28) and the closeness in time between the alleged

12

misstatements and corrective disclosure (Opp. 28-29) both rest on the misplaced assumption that the Company would not have raised capital in September 2022 unless it had a current need for additional capital. Plaintiffs' argument based on the core operations doctrine (Opp. 29-30) and the four confidential witnesses' observations regarding Mr. Serlin's hands-on management (Opp. 30-31) are irrelevant because Mr. Serlin does not claim to have been unaware of the Company's cash position or projections of the capital the Company anticipated it would need to fund its operations through the first half of 2024.

## CONCLUSION

Defendants' motion to dismiss should be granted because the AC does not adequately allege any false or misleading statements, the statements at issue are protected by the PSLRA safe harbor for forward-looking statements, and the AC does not allege facts supporting an inference of scienter.

Dated: December 6, 2023      GREENBERG TRAURIG, LLP

By: */s/ Jason H. Kislin*
    Jason H. Kislin
    Robert Horowitz (admitted *pro hac vice*)
    Jaclyn DeMais
    500 Campus Drive, Suite 400
    Florham Park, NJ 07932
    Tel: (973) 360-7906
    kislinj@gtlaw.com
    horowitzr@gtlaw.com
    demaisj@gtlaw.com

    *Counsel for Defendants*

13

## **Certificate of Service**

I hereby certify that on December 6, 2023, Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Amended Complaint was filed with the Clerk of the Court and served via ECF on all counsel of record.

GREENBERG TRAURIG, LLP

By: /s/ *Jason H. Kislin*
    Jason H. Kislin
    Robert Horowitz (admitted *pro hac vice*)
    Jaclyn DeMais
    500 Campus Drive, Suite 400
    Florham Park, NJ 07932
    Tel: (973) 360-7906
    kislinj@gtlaw.com
    horowitzr@gtlaw.com
    demaisj@gtlaw.com

    *Counsel for Defendants*

14